### STERLING *v.* METROPOLITAN LIFE INS. CO.

(*Supreme Court, General Term, Second Department.* June 25, 1888.)

INSURANCE—AGENTS—ACTION FOR COMMISSIONS—SUFFICIENCY OF EVIDENCE.
Plaintiff agreed to solicit insurance on commission, with additional commissions on renewal of policies secured by him. Defendant reserved the right to discharge plaintiff for any malpractice, in which case he should forfeit such additional commissions. Plaintiff, having been discharged for failure to forward premiums, testified, in an action for such additional commissions, that he had taken notes for the premiums under directions of defendant's vice-president, which the latter denied having given. A witness testified that plaintiff said he was foolish to take the course he did. *Held* that, on such conflicting evidence, a verdict for plaintiff would not be disturbed.

Appeal from circuit court, Kings county.

Action by Sherwood Sterling against the Metropolitan Life Insurance Company to recover commissions on policy renewals. Judgment for plaintiff, and defendant appeals.

Argued before LEARNED, P. J., and PRATT, J.
*Arnoux, Ritch & Woodford,* for appellant,    *L. A. Fuller,* for respondent.

BARNARD, P. J.    The facts of this case are very simple, and are generally admitted.    The case turns upon one disputed question only.    On the 13th of September, 1872, the plaintiff and defendant entered into an agreement in writing by which the plaintiff was to solicit applications for insurance in defendant's company.    The rate of compensation was by commissions upon the amounts, and varying with the length of time which the policies were to run. The employment continued until the 28th of January, 1875, when it was terminated by the defendant.    The contract provided that it should continue during the good behavior of the plaintiff, and that the defendant, for the plaintiff's default or neglect, might terminate the contract upon a notice of 30 days, and for his malpractice the defendant could terminate it at once.    The contract further provided that, in addition to the commissions upon the procurement of the policies, the plaintiff was to be entitled to a commission upon the renewal of all the policies "developed by him under the contract" for a term of 10 years after the contract ended, as provided in the contract. The contract provided that, upon a discharge for malpractices, "all business developed under this contract shall be thereupon forfeited."    The defendant avers a discharge of the plaintiff for malpractice, and this is the only issue in the case.    The contract, the performance under it, the averment of his commission, if he be entitled to any, are all uncontradicted.    The question litigated as to malpractice is again simplified by many undisputed facts, so as to finally leave one fact only upon which it depends.    The plaintiff did not forward the moneys received for policies and renewal premiums, as he should have done by the defendant's instruction; but he says these were waived by the company, and thus the question is solely whether this is so or not.    Upon this question there are but two witnesses, the plaintiff and the defendant's vice-president.    It is proven that the defendant sued the plaintiff and his sureties for a balance of money unpaid, and recovered a judgment which was paid.    The plaintiff's case depends upon the fact whether the defendant consented that he might take notes for the premiums, instead of cash.    He testified that, owing to the tightness of money and to effects of the panic in 1874, he told the defendant's vice-president, Mr. Hegeman, that, to keep the business together, it was necessary to take notes for the premiums; that Hegeman replied, "Get them in as fast as you can."    The plaintiff held about $3,500 of these notes when he was discharged, and there was less than this sum due the company by the commission due plaintiff.    Hegeman denies the conversation, and all its parts.    A witness, Bendsly, states that plaintiff said he was foolish to take the course he did, and this completes the evidence upon the issue.    The plaintiff's conduct is in many respects as consistent with his views of the case as they are with the defendant's theory of it.    The authority of the plaintiff, and the real truth of the matter, are more likely to be determined correctly by the trial than by an appellate court.    The legal rule is in conformity with this, that a fairly debatable question of fact will not be reversed on appeal.    Judgment affirmed, with costs.

PRATT, J., (*concurring.*)    There being no contention as to the proof or amount of plaintiff's claim, it is only necessary to consider the defenses set up in the answer.    As to the defense of "compromise and satisfaction."    Defendants sued plaintiff for what he owed them when he quit work.    According to the statement prepared by their accountant, the debt on September 16, 1887, amounted to $2,846.18.    That amount was paid in full by him or his sureties, without abatement or compromise.    After that settlement, Sterling asked defendants "to allow something for his business" towards payment of the note already given by his bondsman, which defendant refused to do.

That refusal was not a compromise nor a settlement. That defense is not sustained. As to the other defense pleaded, viz., a fraudulent detaining by plaintiff of upwards of $2,800 of defendant's money, collected by him as agent. The evidence shows that, to help along the business, Sterling had taken $3,500 of notes in cases where the policy-holders were unable to pay cash. By so doing, he had got in arrears to the company, which refused to accept from him anything but money to the amount of $2,800. But the figures, far from establishing that Sterling had detained defendants' money, seem to show that he had paid over to them more cash than he had collected; for while but $2,846 in arrear, he had in hand $3,500 of notes thus received. The second defense, therefore, is not established. It is suggested that failure to send on the notes was a breach of duty. A sufficient answer is that no such breach of duty is pleaded. Another is that the company refused to receive anything from him for premiums except cash. There is some dispute in the evidence as to whether Hegeman instructed Sterling to accept notes instead of cash. That question does not seem to be important. There is no defense pleaded that he violated duty in taking notes instead of money. Moreover, were there such a plea, acquiescence in his custom for several months would probably be equivalent in law to express instructions. It may be observed that, while the specific instructions and conversations testified to by Sterling are contradicted, it is not denied that the company had knowledge of his custom, nor is any objection to it shown. Suggestion is now made that the plaintiff's evidence as to receiving notes is an after-thought. But the history of the trial gives no support to the suggestion. Plaintiff was not cross-examined upon the matter, and his efforts to give full details were successfully resisted. Defendants cannot be heard to complain of a meagerness of proof caused by their own objection. But the proof is not defective. The details of the notes would have made no difference in the legal effect of the evidence. It would have merely given facilities for a cross-examination that was not desired. The apparent explanation is that defendants were already well informed as to the notes, regarded the fact as unfavorable to them, and excluded the evidence so far as in their power. It is argued that plaintiff has misconceived his remedy; that he should have sued for damages for a wrongful discharge. He was not restricted to that remedy. He might well prefer an action in which the amount of his recovery would depend upon figures, and not upon estimates and opinions. The judgment should be affirmed, with costs.